**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| WECREVENTION INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:25-CV-01040-JRG |
| | § | |
| DELL INC. and DELL TECHNOLOGIES, | § | |
| INC., | § | |
| | § | |
| *Defendants*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants' Motion to Dismiss for Improper Venue or Alternatively Transfer to the Western District of Texas. (Dkt. No. 19 ("Motion").) Having considered the Motion, the associated briefing, and the documents submitted in support thereof, the Court finds that the Motion should be **GRANTED**. The Court also finds that, rather than a dismissal, the above-captioned case should be **TRANSFERRED** to the Western District of Texas.

## I.    BACKGROUND

Plaintiff WeCrevention Inc. ("WeCrevention") filed suit in October 2025, accusing Defendants Dell Inc. and Dell Technologies, Inc. (collectively, "Dell") of infringing five U.S. patents. (Dkt. No. 1.) Dell thereafter filed the instant Motion to dismiss and asserted that this District is not a proper venue for this case. After the Parties conducted discovery relating to venue issues, briefing for the instant Motion completed in May 2026.

## II.    LEGAL AUTHORITY

A defendant may move to dismiss an action for "improper venue." Fed. R. Civ. P. 12(b)(3). "Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff." *ATEN Int'l Co., Ltd. v. Emine Tech. Co.*, 261 F.R.D. 112, 120–21

(E.D. Tex. 2009) (cleaned up).  A plaintiff may carry its burden by presenting facts, when taken as true, that establish venue.  *Id*.

28 U.S.C. § 1400(b) controls venue for a patent infringement case such as this.  That statute provides two prongs under which venue may be proper.  Specifically, a patent infringement action may be brought in the judicial district where the defendant "resides," or where the defendant has committed acts of infringement and has a "regular and established place of business."  *Id.*

For the first prong of the patent venue statute, a defendant only "resides" in a district if it is incorporated in the state in which the district is located.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 268 (2017).  For the second prong, a "regular and established place of business" imposes three requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Failure to satisfy either prong of the patent venue statute requires a finding of improper venue.  *Id.*  If venue is improper, the court shall dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## III.    ANALYSIS

### A.    Whether Defendants "Reside" in This District

Venue is proper in this District if the Dell Defendants are incorporated in Texas, such that Dell would "reside" here under the first prong of the venue statute.  *See TC Heartland*, 581 U.S. at 268 (citing 28 U.S.C. § 1400(b)).  The Dell Defendants, however, are incorporated in Delaware, not Texas.  So venue is not proper in this District based on where Dell resides, and turns on whether Dell has a regular and established place of business in this District.

**B.    Whether Defendants Have a "Regular and Established Place of Business" in This District**

Under the second prong of the patent venue statute, venue is proper if the Dell Defendants have a "regular and established place of business" in this District.   28 U.S.C. § 1400(b). WeCrevention argues that Dell has such a place for three reasons: (1) Dell leased space at a Flower Mound facility in this District at the time WeCrevention filed its Complaint; (2) Dell has an extensive workforce that resides in this District; and (3) a number of Dell's key business partners conduct business in this District.  (Dkt. No. 51.)  As explained below, the Court finds that these arguments are unavailing.

i.    The Flower Mound facility is not Dell's "regular and established" place of business because Dell ceased its use and moved out before WeCrevention filed its Complaint.

WeCrevention identifies Communications Test Design, Inc.'s Flower Mound facility as Dell's regular and established place of business.  (*Id.* at 5–12.)  Some background information on this third-party company and its facility follows: Communications Test Design, Inc. ("CTDI") is a repair and logistics company that provides solutions to the communications industry.   The company owns or owned a building in Flower Mound, Texas ("Flower Mound facility"), which is located in this District.  Dell has worked with CTDI and its Flower Mound facility to support, among other purposes, Dell's "Telco" and "Rack Integration" business.  (Dkt. No. 19 at 4, 5.)

This Court previously found that the Flower Mound facility was Dell's regular and established place of business.  *See Cloud Byte LLC v. Dell Inc.*, No. 2:24-CV-00637-JRG, Dkt. No. 123-1 (E.D. Tex. Sep. 19, 2025).  The Court explained that Dell's business there was regular and established because at least sixteen (16) Dell employees were present at the Flower Mound facility over at least thirty-three (33) discrete times and dates during the relevant time.  *Id.* at 6–8. The Court also explained that Dell had a lease-like agreement with CTDI, wherein a space

"dedicated to Dell" in the Flower Mound facility comprised 24,000 contiguous square feet for which Dell paid a monthly price.  *Id.* at 8–11.  The Court found that this space was Dell's regular and established place of business given the totality of these circumstances.  *Id.*

However, circumstances have materially changed since the Court last analyzed Dell's use of the Flower Mound facility.  Specifically, before WeCrevention filed its Complaint in this case on October 10, 2025, Dell had ceased to use and moved its business away from the Flower Mound facility.  (Dkt. No. 19 at 4–6.)

Months before the Complaint, on April 28, 2025, Dell decided to transition work away from CTDI's Flower Mound facility.  (*Id.* at 9.)  The transition first involved discontinuing Dell's Rack Integration work with CTDI on August 1, 2025.  (*Id.*)  Dell then moved its Lifecycle Hub and Telco work to a different (and less expensive) CTDI facility in the Northern District of Texas over the weekend of September 13–14, 2025.  (*Id.*)  Dell's operations were fully out of the Flower Mound facility by October 1, 2025, which was roughly nine (9) days before WeCrevention filed its Complaint.  (*Id.*)  What was once a bustling leased space comprised of Dell employees and its equipment, became an empty warehouse that had ceased to be used by Dell before this suit was filed.

Since Dell moved out of the Flower Mound facility before WeCrevention filed its Complaint, the Court does not find that the Flower Mound facility was a regular and established place of business of Dell during the relevant time.  *See Personal Audio, LLC v. Google, Inc.*, 280 F. Supp. 3d 922, 924 (E.D. Tex. 2017) ("[V]enue facts are to be examined as of the date the suit is filed.").  WeCrevention's position, arguing that the Court need not update its prior Flower Mound analysis, is incorrect.  (*See* Dkt. No. 51 at 10.)

WeCrevention's remaining arguments regarding the Flower Mound facility are inapposite. That Dell continued to lease the vacated and empty Flower Mound facility for a few weeks after Dell stopped its business there does not show that it was Dell's regular and established place of business when WeCrevention filed its Complaint. (*See* Dkt. No. 51 at 10–12.) Said another way, CTDI's empty warehouse did not rise to the level of a regular and established place of business of Dell during the relevant time. WeCrevention also stresses that the Court should not credit Dell's witness testimony because the witness was "remarkably forgetful" about specific move details. (*Id.* at 12.) This, however, disregards the record as a whole. On balance, Dell's documentation submitted in support of its Motion corroborates Dell's sworn representations that it had moved out of the Flower Mound facility before WeCrevention filed suit. (*See, e.g.*, Dkt. No. 19 at 1, 2; Dkt. No. 19-1; Dkt. No. 53 at 4.)

ii.   <u>Dell does not have a place in this District because Dell's employees work from home and visit customers here.</u>

WeCrevention also contends that Dell has a regular and established place of business in this District because its employees sell Dell products and services to customers and provide support for the same in this District. (Dkt. No. 51 at 12–19.) WeCrevention identifies that Dell relies on "228 field employees and hundreds more remote employees that live in and work from their homes in this District." (*Id.* at 12.) They cover specific geographical territories in this District and receive a "basic package of equipment, such as [a] 'laptop, a headset, a mouse, a keyboard, a monitor, a dock, and a backpack.'" (*Id.* at 14–17 (citations omitted).) WeCrevention represents that "[p]recedent strongly supports" a finding in its favor with respect to Dell's remote employees. (*Id.* at 18.)

These arguments fall short. WeCrevention offers no evidence that the Dell Defendants have any corporeal or incorporeal interest in their employees' homes, played a part in selecting

their home locations, required the employees to store inventory at their homes, condition employment on maintaining a home specifically in this District, or advertise employees' homes as their places of business, as the Federal Circuit has addressed. *In re Cray Inc.*, 871 F.3d 1355, 1365 (Fed. Cir. 2017). Without stronger ties between a defendant and its employees' homes, the Federal Circuit has determined such limited contacts to be insufficient for establishing venue regarding an employee's home. *Id.* at 1357.[1] Under this precedent, the Court finds that WeCrevention has not met its burden to show that Dell's employees' homes and work regions can establish venue over Dell in this District.

      iii.     The locations of Dell's business partners are not Dell's places of business.

WeCrevention's last venue argument attempts to redefine the physical locations of Dell's various business partners. It argues that hundreds of Dell's business partners have facilities in this District. (Dkt. No. 51 at 20, 21.) One partner allegedly houses millions of dollars in Dell inventory at its facility. (*Id.*) Dell contracts with such business partners and allegedly has control over their employees; the business partners help Dell sell devices and service warranties. (*Id.* at 22–24.)

However, under the third *Cray* factor, "'the regular and established place of business' must be 'the place of the defendant.'" *Cray*, 871 F.3d at 1363. To be the place of the defendant, "the defendant must establish or ratify the place of business." *Id.* A court may consider "whether the defendant owns or leases the place"; "exercises other attributes of possession or control over the place"; "[m]arketing or advertisements . . . but only to the extent they indicate that the defendant

---

[1] While this Court is bound to follow the Federal Circuit's *Cray* precedent, it is clear that *Cray* was decided prior to the worldwide COVID-19 pandemic of 2020–2022, which reordered much of the workplace structure in a way not known or contemplated when *Cray* was decided. Prior to the pandemic, working from home was an exception to the norm of working from a centralized brick-and-mortar workplace. While *Cray* remains undisturbed, it is challenging to discount such reordering and treat remote work models in the same manner as existed pre-COVID. The Court looks for future guidance on this issue.

itself holds out a place for its business"; "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory"; or whether the defendant "places its name on a sign associated with or on the building itself." *Id.* at 1363–64.

The Court finds that WeCrevention has not met its burden under the third *Cray* factor to demonstrate that the offices and locations of Dell's business partners are Dell's places of business. Here, there is no similar evidence that Dell leases space and pays rent as to its business partners' places, as the Court previously found compelling with respect to the Flower Mound facility. In reality, there has been no showing that Dell has control over the facilities of these partners that sell and service Dell products. Dell has specifically disclaimed any agency relationship with such business partners, further supporting the conclusion that the buildings of Dell's partners are not regular and established places of business of Dell. (Dkt. No. 53 at 7.)

### C. Transferring This Case to the Western District of Texas Is in the Interest of Justice

If venue is improper, the Court may "in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Dell asks that the Court transfer this case to the Austin Division of the Western District of Texas as an alternative to dismissing it for improper venue. (Dkt. No. 19.) WeCrevention opposes the Motion in its entirety but does not specifically address whether this case should be transferred if the Court finds that venue is improper. (Dkt. Nos. 51, 58.)

Given the facts at hand, the Court finds that transferring this case would be in the interest of justice. Dell is headquartered in the Western District of Texas. The Court also finds that this action could have been brought there initially, which the Parties do not dispute.

## IV.     CONCLUSION

For the reasons stated herein, Dell's Motion (Dkt. No. 19) is **GRANTED**, and the above-captioned Case No. 2:25-cv-01040-JRG is **TRANSFERRED** to the Western District of Texas.[2] All requests for relief between the Dell Defendants and Plaintiff not expressly granted herein are **DENIED AS MOOT**.  The Clerk is **ORDERED** to transfer this case as set forth above, *instanter*.

**So ORDERED and SIGNED this 15th day of July, 2026.**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

---

[2] Notwithstanding Dell's request to be transferred to the Austin Division, this Court simply transfers this case to the Western District of Texas and leaves it to that Court to designate a specific judge and division which will assume responsibility for this action.